oral argument not to exceed 15 minutes per side. Mr. Tableman by Zoom for the defendant appellant. Good morning. Please record my name is John P. Tableman. I'm appearing on behalf of Mr. Wilkes. I'd like to reserve four minutes for rebuttal, please. Yes, thank you. Thank you very much, Your Honor. Your Honor, this case is an arbitrary criminal act case that involves the intersection of the Taylor Categorical Analysis and some chemistry, some difficult chemistry that I think both counsel and the District Court struggled with. The crux of the issue here is whether Mr. Wilkes could be used as predicates for purposes of enhancing his felon possession sentence under the Armed Career Criminal Act. This issue has significant practical importance for Mr. Wilkes because it changed the penalty for his crime from 0 to 10 years to 15 years to life. And in fact, after the District Court found that the predicates counted, he received a sentence of 180 months in prison. There were two chemistry aspects of the case. One involved whether the federal schedule excluding idle flu pain should apply and that issue has been foreclosed on this appeal by this court's recent decision in Clark. The second issue, the definitions of cocaine contained in the Federal Controlled Substance Act compared to the definition contained under Michigan law. Michigan law defines cocaine to include its stereoisomers. Federal law says cocaine includes its optical and geometric isomers. The question then was, do stereoisomers under Michigan law encompass more substances than optical or geometric isomers under federal law? Do you concede that under your interpretation, the adjective, what is it, geometric, has no meaning, has no application because of the nature of cocaine? I think that's a little bit of an overstatement, so I don't concede that. That's the rationale that the District Court used to say that under Mr. Volk's interpretation, the word geometric does no work in the statute. I would say the word geometric is ambiguous. If you parse through all the chemical experts' testimony, including the government's testimony, I can't see that there was some definition given what geometric actually means. There's a chemistry dispute over that, and in fact, the gold book that both experts relied on that gives definitions in the field of chemistry says that geometric is an obsolete, disfavored term. I recognize that, but so you say that, I may well agree with you that at first blush in the abstract, geometric is ambiguous, and then you say then we should immediately jump to the rule of linity, but the Supreme Court's precedent suggests the rule of linity doesn't apply until we exhaust all the tools of interpretation, and one of those tools is we're not supposed to assume that Congress used a word that had no effect in the statute. So if the word is ambiguous and under one reading, it would have meaning, and under another reading, it would not have meaning. We're supposed to prefer the one in which it has meaning. So if you have an argument for why it would have meaning under your view, I think it would be really great to hear it. As best as I can understand what my expert had to say, Dr. Dougland, geometric can refer to cis-trans isomers, and cis-trans isomers are not the same as cocaine's stereoisomers. If you look at the chemical definition of the stereoisomers that's contained in the government's diagram that's brief, you don't see the word cis or trans in there. They just don't fit. So, but we're guessing because we're trying to look at what does a term put into the law in 1986 mean when the field of chemistry has moved on and said this term is obsolete and doesn't help us in as far as understanding chemistry. And when you're talking about sending someone to prison for 15 years to life, I think it requires more than what we have in the statute. We have an obsolete term. So I'm not sure if I'm answering your question, but my expert's view was the best meaning for geometric would be cis-trans. But you, so I know the expert on the other side suggests that all the other stereoisomers were cis-trans isomers as well, but your expert disagreed with that. So I think under your view, I don't understand why you're not conceding that under your view there would be no isomer of cocaine covered by the phrase geometric. I don't, well, if I, here's my fear. If I concede, then you're going to say, well, I understand it means something, and therefore geometric means something. But this is your opportunity to tell us what it means under your view. And I still haven't heard it. To me, the best that it means is cis-trans isomers. And cocaine stereoisomers, in the case of cis-trans isomers, he has to make an assumption that chemistry does not favor, and that's why they've gone beyond this idea of geometric. He has to say, I'm taking some reference point, and then I'm saying this is cis and this is trans, but that's applied to a cocaine molecule, which is a complex molecule. And cis-trans typically is applied, as I understand it, is applied to less complex molecules. We don't have to go in there and say, well, I'm going to start here, and now it's cis, or I'm going to start there, and now it's trans. Help me understand kind of an elementary question that I have is, why are we in the world of expert testimony? Is that, is there precedent for bringing in expert testimony immediately in the interpretation of statutory language? Is there normative statutory interpretation that needs to come first? Perhaps consideration of legislative history or information that Congress looked at to make the choice of those words? Because it seems to me that whole step was skipped. Am I missing something? No, I don't think you're missing anything at all. I think that's a very good question. I think the problem is we don't have any legislative definition of the word geometric. And the field of chemistry has moved beyond to the point where that term is not used. It's called obsolete and distinct. Is there nothing, is there nothing in the legislative history or information about the Act that tells us the genesis of the use of those terms? I think the idea was to defeat the so-called isomer defense that was being compounded in courts where defendants were saying, well, you've done a lab test and said it's cocaine, but you haven't proven that it's not the optical isomer of cocaine, the mirror image of it, and so therefore you have a reasonable doubt that this was natural cocaine as opposed to a synthetic isomer. I think that's why this was put into place. So under your view, would the isomer defense still exist under federal law? Because under your view, I take it, the federal guideline or the federal schedule does not include all of the isomers of cocaine. We're left with the language that says optical and geometric. Geometric has no meaning. Optical does. So the isomer defense would not exist because I believe the only way you can apply it would is an anatomical or optical isomer. I thought the optical isomer was the mirror image one and that there's like five others. Those are the stereo isomers. So would the, under federal law today, under your view, would a defendant be able to say I may have distributed a stereo isomer of cocaine and it has the same composition, therefore it's not covered by the federal, or you have to prove that it was the actual cocaine and not a stereo isomer. Yeah, I think, yes. I think a defendant could assert that potential offense, bearing in mind that, yep, yes. So doesn't that undercut your interpretation though? Because that was the entire point of the law. We're allowed to look at the context in which Congress legislated. It was legislating against the backdrop of wanting to do away with this isomer defense. And you just recognize that the isomer defense, under your view, is alive and well today. Well, it's not fully in the record, but my understanding is that the testing wouldn't, I don't think there's testing that could show us evidence, but I'm not sure of that. So, yes, I guess the short answer is that does sum up my view. So can I just get a clarification there, because it sounds like, this is following up on Judge Murphy's question, it sounds like there's really no daylight between the isomer defense and your defense. My defense is that geometric isomer is not, is a term that has lost its meaning. And both experts agree the best step we can go to is cis-trans isomers, and stereoisomers of cocaine are not cis-trans isomers. Therefore, when Michigan says we're outlawing stereoisomers, they're outlawing more than what federal law would permit. Is there any evidence to suggest, and I know that we're running short on time here, but is there any evidence to suggest that Congress understood geometric isomers to mean cis-trans isomers? I'm not aware of that, and there probably would not be, because it's a term of art and chemistry that apparently evolved. I don't think either expert has told us historically what geometric isomer was, and other than my experts saying it really applies to cis-trans isomers. We thank you. You will have your full rebuttal time. Thank you very much. Good morning, Your Honors, and may it please the Court. Catherine Delzow on behalf of the United States. Michigan cocaine trafficking convictions do qualify as serious drug offenses under the ACCA, and that is because every substance that Michigan covers is also covered under the Michigan schedule, or under the federal schedule. I want to say, first, I agree with Mr. Tableman that the Clark decision forecloses his IL-flu pain argument, so I will skip over that for now and focus on geometric isomers. Michigan and federal law use different terminology, but they cover the exact same isomers. And I want to be clear that the defense interpretation would read geometric out of the statute. What we have here is two expert opinions, one of which is consistent with what Congress did, and the other is not. And the reason the defense expert would read geometric out of the statute is because both experts agree there are eight stereoisomers of cocaine, so eight substances. Both experts agree that geometric is a subset of stereoisomers. So the term geometric refers to, you know, if any cocaine isomers, it has to be one of those eight. And the defense says that none of those eight are geometric. So what that means is that when Congress went out of its way, it deviated from the default isomer definition in the Controlled Substances Act, specifically to add a category of substances for cocaine, added geometric. The default definition of isomer just says a substance is optical isomer. Congress said, no, for cocaine, we want to add geometric. Was the phrase stereoisomer in wide use in, what, 1986? You know, I don't know exactly when that term came. I think it probably was around. There was probably some overlap between the terminology. I mean, the older terminology is optical, geometric, and positional. And then at some point, the chemistry world moved on to stereoisomers and diastereomers. The reason I say the stereoisomer and diastereomer language might have been around is because when the DEA, which, of course, is the agency that administers the drug schedules, went in 1986 to add Congress's new isomer definition to the Code of Federal Regulations, in the Notice of Proposed Rule, there was a supplementary information section where they were kind of explaining what they were doing. And the DEA said, you know, when Congress says optical and geometric isomers of cocaine, that encompasses the eight stereoisomers of cocaine, including the six diastereomers. I mean, I think they specifically said, quote-unquote, includes the diastereomers, and then they listed them. It's allococaine, pseudococaine, and allosuedococaine, plus the three optical isomers of those three. Would you agree that, so I think we're supposed to try to figure out what the term meant in 1986. And there seems to be some evidence in the expert reports that the term maybe has evolved a bit. And I think a fair amount of your brief is dedicated to the notion that geometric may today be best situated as being equivalent to the Michigan stereoisomer. But if it wasn't the case in the 1980s, then that would create a problem, I think, for your position. I give you the example of Brian Garner's statutory interpretation treatise talks about the word awful, and says that awful at one time meant awe-inspiring. And so if Congress used the word awful at that time, it would have a positive connotation, whereas today we, of course, recognize it as having a very negative connotation. And so our goal here in statutory interpretation is to determine what it meant in the 80s. And do you think it's as clear that it meant all of the stereoisomers, the non-mirror image stereoisomers? I think it's very clear in the 1980s what was meant by this language. And I say that because however you interpret the term geometric, whether it is synonymous with diastereomers or whether it is synonymous with cis-trans isomers, it is beyond clear that Congress thought that it encompassed something. And the DEA said it encompasses these six isomers of cocaine. All the case law at the time when the isomer defense was in vogue, all those cases understood that there were eight isomers of cocaine at issue. And that, of course, is what Congress was addressing. The legislative history says that. It says, look, we want to get rid of this cocaine isomer defense. And beyond that, Congress also said in the legislative history, we understand that there are clandestine manufacturers out there trying to make optical and geometric isomers of cocaine and thereby evade the Controlled Substances Act, and we want to eliminate that. So it's not a problem for our position if the term geometric has evolved over time, because as our expert said, even on the narrow interpretation of geometric that the defense expert posits, which is that it means cis-trans isomers, those isomers of cocaine are cis-trans isomers. And, I mean, there just was no confusion in any legal authority in the 1980s that that was the case. Because, again, I mean, to just go back to the point, if the defense expert is right that there are no geometric isomers of cocaine, it just reads it completely out of the statute, and that's not what courts are supposed to be doing when they interpret statutes. And it harkens back to a question that Your Honor, Judge Stranch, asked, which is why do we even need the experts? You know, could we just do this as a matter of statutory interpretation? And I think we could here. I think, as we said in our brief, there's a strong statutory interpretation that we have to win and that our expert's opinion was correct. You know, whatever Congress thought geometric was, it includes these six diastereomers. The reason there are experts is, number one, I mean, the defense got an expert and started filing expert reports in all these cases. And without the experts, I think it's hard for district judges to kind of get the framework in chemistry. You know, you start throwing around terms like geometric and positional and optical and stereoisomers and diastereomers, and no one knows what that means unless you're a chemist. So the experts help, you know, just get the basic framework. For example, without our expert, it took me a while to realize that the defense interpretation would read geometric out of the statute because you have to know the significance that it's a subset of stereoisomers, there are eight stereoisomers, you know. So I think that is the role of the experts in these cases. But really... Following the step of having looked behind what Congress was working on and the information in their legislative history, I recognize this is the world we live in now. There are going to be all sorts of synthetic drugs. We're going to be having arguments like this from now on. So the question for me is how do we honor traditional interpretation in a way that doesn't leap to a simple battle of experts and who can find the person who understands it their way and get them before the court. And if that happens, isn't the issue that we are going to have divergent views across the nation because experts in the West may not say the same things as experts in the East and we have courts ruling without the kind of overarching systematic analysis that has been the history of legislative interpretation. Do you understand my concerns? Yes, and we share the same concerns, of course. And I think it's a problem inherent in the categorical approach, which is, I mean, simultaneously as we have these cocaine isomer cases going, we have defendants challenging heroin convictions. And so that's a different analysis, you know, because the federal and state schedules use different terminology regarding heroin and we have a strong argument that all of the substances that Michigan covers are also covered on the federal schedules, but you have to talk about different things. And we have discussed in the office, you know, how ironic would it be if we got a court ruling saying, for example, cocaine convictions don't count for enhancement, but heroin convictions do. I mean, that's not a world anyone wants to live in. It's not consistent. It's a problem. And I understand that there are problems with the categorical approach, and yet in a way the practicality of the categorical approach is very important. Yes. Because it enables us not to spend incredible amounts of time trying to find documentary evidence from 15 years ago that doesn't exist in many cases. So the idea that we can throw that out the door and then simply go back and look at what an individual did or was convicted of is a bit of a pipe dream. Right. I mean, it's another irony, which is that the categorical approach is supposed to make life simpler, and in this instance, you know, we had to bring in two experts from MIT. You know, I think there's an argument to be made that in Michigan, I mean, of course, the categorical approach allows looking at the Shepard documents, and here it's beyond dispute that his Shepard documents, the charging documents, say cocaine. And of course, cocaine is covered on the federal schedule. And so, you know, one could ask, why are we even here? I was curious about that. Right. So under Michigan law, I think that it might be different between Michigan and federal law. Under Michigan law, the type of substance is an element of the so you have to prove beyond a reasonable doubt to a jury. So under the modified categorical approach, how close does the law cut it? Do you have to actually, if you allege cocaine, is that enough? Or do you actually have to allege coca leaves or a stereoisomer? So we looked into that in the beginning. I think it is very likely that, for example, if someone was caught in Michigan with aloe cocaine, likely the lab test would show aloe cocaine, and that is probably what would be charged in the charging document. The problem is saying that as a categorical matter, you know, is every single prosecutor in Michigan charging a specific cocaine isomer, or would they just kind of lump it under cocaine? I think the answer is that they would charge the specific substance that came back from the lab as, you know, the drug. Doesn't that suggest, I mean, that is less a prosecutorial discretion and more for the Michigan Supreme Court about what the statute means. The statute is interesting. It doesn't say cocaine means this, including cocaine and other things, including the stereoisomer. Yes. I mean, this all, because his indictments clearly said cocaine. Yes. And so under the modified categorical approach, since it is an element, if that is true, then this is an easy case. We don't even have to get into the stereoisomers. But that is just unclear as a matter of Michigan law, I guess, is your bottom line? You know, both in terms of practice and Michigan law, you know, I don't know that, and I certainly don't have a case here for you right now that says if you have a cocaine stereoisomer, you need to charge that in the indictment. Like I said, practically speaking, I think that's probably what would happen, but like proving that as a categorical matter is very hard to do. You know, try to take a survey of all the different county prosecutors. And also, you know, there are questions with the lab. Lab testing is decentralized in Michigan. There are some states, I think it's Minnesota, I want to say, where all the drug testing is just done in one central lab. And so you can get an affidavit from that lab that says, no isomer would test positive for cocaine. And then that kind of kills all of this. But the problem in Michigan is the labs are decentralized, and it kind of depends on what test is run, and the techs in some of the labs have discretion as to which tests they run on a drug. And so, again, I suspect it's highly likely that an isomer of cocaine would not test positive as cocaine, but trying to get an affidavit from every single lab and prove that as a categorical matter is a little bit difficult. And so, although it seems strange, the most straightforward approach in this case was to hire an expert and say, look, geometric means this. And so we can say categorically that anyone who has been convicted in Michigan of cocaine, even if an isomer tested positive as cocaine, or if, you know, the person had a cocaine isomer and the prosecutor charged cocaine, whatever the circumstances, he was convicted of something that was scheduled federally. So, you know, that kind of exhausts, I think, the bulk of what I have to say about geometric isomers, is it's just beyond clear, both in the 1980s and now, that the law, the definition covers these things, and it makes the state and federal definitions the same. And I would just note, too, of course, and I'm sure the court is well familiar with the absurd outcomes that would result if the defense interpretation is adopted here, which is that no Michigan cocaine trafficking convictions would count as a serious drug offense for the ACCA, and that would be a surprising result. And as the panel alluded in its questioning of my opposing counsel, Congress eliminated the cocaine isomer defense back in the 1980s. I mean, this was 40 years ago. We know Congress did not like these types of defenses, and here it is again, you know. So it would define what Congress desired. And so for all those reasons, I think it's clear, and of course Mr. Wilkes relies on the rule of lenity. I don't think that applies in this instance. There's no ambiguity. Do you mind switching gears a little bit? Sure. So there is, I know, I guess we've taken this on the premise that, what is it, Clark controls on the other issue, but the Eighth Circuit does distinguish the career guidelines, career criminal guidelines from ACCA, and it has a precedent where it says ACCA time of sentencing, but the guidelines time of conviction. So we would be splitting with that if we just followed Clark. I wonder if you have an instinct. It doesn't seem necessarily required for us to say that Clark controls because we could say that this other drug, I don't know how to pronounce it. Ioflupine. Ioflupine. It's just under Michigan law, there's the carve out for if it's not subject to abuse. It seems to me that if we went that route, we would avoid that time of conviction versus time of schedule or time of sentencing altogether. I wonder if the government has a position on which route is preferable or if you would just briefly comment on that. You know, as to which one is preferable, I don't know that the government necessarily has a preference, and I think you're correct that under either argument, the defense interpretation of Ioflupine loses. As for Clark and whether it controls an ACCA, I would say that the Clark decision makes no distinction amongst the different types of enhancements. In fact, even though Clark was a career offender case, it cited ACCA cases and said that they insufficiently grappled with the logic of McNeil. The Supreme Court also in McNeil cited favorably this court's decision in Mallet, which was a career offender case, showing that I don't think the Supreme Court thinks there's a distinction between these enhancements. I think it thinks that the same logic would apply to the enhancements, and I agree with that. I think that under McNeil, you know, you can make policy decisions one way or another on what the better rule is, time of conviction or time of sentencing, but I think McNeil's logic dictates that we accept a time of conviction approach, and I don't see what the distinction would be between the different enhancements. And the 11th Circuit recently, as we filed a supplemental authority, you know, they originally said that we're going to take a time of, it wasn't sentencing in that case, but I think it was the time of when the defendant committed the federal offense is when they were going to consult the federal schedule, and then they sua sponte withdrew their opinion and invited briefing on the impact of McNeil, and then they said McNeil dictates the outcome, and Jackson was an ACCA case. So, you know, the 8th Circuit may say that, but we have a different conclusion from the 11th Circuit, and like I said, I think Clark does not distinguish between the enhancements and neither does the Supreme Court, so I don't see why this court would. But you're right. I mean, even if... No matter what we say on that issue, that would be, I mean, the circuit split already exists and it's real, right? Right. I think it's for the Supreme Court, I suppose. Right. I agree. I think your time's up. Would you like to conclude briefly? Yes, yes. Thank you very much. Unless the court has further questions, we would rest on our brief for the other issues. Thank you. Mr. Tabelman? Well, thank you very much, Andrew. I think I just want to repeat that, according to my expert, stereoisomers are not cis-trans isomers. Stereoisomers from cocaine are not cis-trans isomers. They don't match up then with the current meaning of geometric. You know, cis-trans is the successor to geometric. So, unfortunately, the court has had to voyage back to what terms of chemistry meant in 1986, and I don't think that we can assume that Congress really knew what it's doing because there's at least one case where a state legislature said, and that's Rodriguez-Gamboa case, where they said, you know, we're prohibiting this, that. It was a methamphetamine case, this, that, and geometric isomers of methamphetamine. In that case, after expert testimony and so forth, it turned out there were no such entities as geometric isomers of methamphetamine. So that terminology in that state law was meaningless. And I understand we have a... I think we have competing preferences. One is we want to effectuate the intent of Congress in our interpretation of statutes. The other preference is we want to honor the overriding impulse of our jurisprudence, which is respect for the individual, and that we don't lock people up unless it's very clear that they violate the law if they're aware that they violate it. And that's the rule of Lenin. And I think in a case like this, it's a paradigmatic example of ambiguity where you're talking about scientific terms that have evolved so that what they meant, as the Court said, awful in the past versus awful now. And I don't think there's a sufficient record here for this Court to be able to determine what was meant by the geometric in 1986. So for those reasons, and for the reasons set forth in my brief, I respectfully ask the Court vacate Mr. Volk's sentence from any case for resentencing. Thank you. We thank you both for your very good briefing and your arguments in a really complex area of law and policy and statutory interpretation. We will take the case under advisement and an opinion will be issued in due course.